## REEVES & CO. v. LEWIS et al.

The rule that knowledge of the agent is knowledge of the principal does not apply where the agent acts beyond his authority, and the person with whom he is dealing knows he is so acting, and where there is nothing to notify the principal that the agent has attempted to make a new or modified unauthorized agreement.

(Opinion filed, Feb. 16, 1910.)

Appeal from Circuit Court, Gregory County. Hon. E. G. SMITH, Judge.

Action by Reeves & Co. against W. F. Lewis and another. Judgment for plaintiff, and W. F. Lewis appeals. Affirmed.

*W. J. Hooper,* for appellant. *Charles A. Davis* and *French & Orvis,* for respondent.

WHITING, P. J. This action was brought to recover upon two promissory notes, each for $679, dated October 4, 1905, executed by the defendants to the plaintiff, and to foreclose a

chattel mortgage given to secure said notes; said mortgage covering one traction engine and the fixtures thereunto belonging.

Answering said complaint, the defendant W. F. Lewis for separate answer alleged, in substance, the following facts: Defendants executed the notes and mortgage, and no part of the indebtedness evidenced thereby had been paid. Defendant openeu negotiations with plaintiff for the purchase of a steam engine with plowing attachments. Plaintiff sent its agent, one Speiser, to negotiate with defendants. This agent represented that plaintiff could furnish an engine suitable for the purposes desired, and defendant, relying upon this representation, and believing it to be true, gave a written order for such engine. This order was in the usual form of such orders. It provided that upon delivery of the engine the same should be settled for either in cash or notes, and if by notes there should be three, each for $679.23 due on December 1st of the years 1904, 1905, and 1906, respectively. There was the usual provision that no agent other than the officers of the company could alter, change, modify, or waive the warranty contained in such order, or make any other or different warranty. There was the usual warranty that the engine was made of good material, and with proper use and management would do as good work as any other engine of same size manufactured for a like purpose. Said warranty was conditioned that if within six days time from the first use of the engine it failed to fulfill the warranty, a written notice was to be given to the plaintiff and local agent stating wherein the engine failed to fulfill the warranty, a reasonable time was to be given to remedy defects, and, if the engine could not be made to fulfill the warranty, the defective engine or part was to be immediately returned, and the company have the right either to furnish another engine or part or give defendants credit for the engine or part thereof returned. There was the usual provision that failure to give notice within six days was to be conclusive evidence of the fulfillment of the warranty, and that the furnishing of improvements or repairs after the end of the six-day period should not in any way extend the liability of the plaintiff company, under such warranty. The engine and attachments were shipped to Bonesteel, S. D., about May 1, 1904.

The defendant and the agent went to Bonesteel to inspect the engine. Defendant discovered that same did not comply with the warranty, in that the pump was defective, and defendant refused to receive or pay for the same. Thereupon the defendant and the agent entered into a new contract, by which plaintiff was to furnish another pump and put the engine in proper condition so that it would do the work for which it was purchased; that defendants would have the privilege of trying the engine, and, if it did not work satisfactory to the defendant, plaintiff would remedy the engine or furnish another, or defendant might return the engine if he elected so to do. In consideration of this new contract, defendant, together with his wife, his codefendant, executed the notes provided for by the written order, but with the express understanding that, if the engine did not comply with the conditions agreed upon, and defendant should elect to return the engine, the notes and the mortgage would be returned to defendants.

After executing the notes under said conditions and terms, the defendant took the engine to his farm for trial. The engine did not comply with the terms of the contract nor work satisfactory to defendant, and many times during the seasons of 1904 and 1905 defendant notified plaintiff that the engine did not comply with the terms and conditions of said contract and that he would not accept and pay for the same until the defects were remedied, and, unless they were remedied, he would return the engine. Plaintiff several times during said seasons sent agents to remedy the defects in the said engine, but they always failed, for the reason that the engine was not adapted to the purposes for which sold, although the defendants did not know of this latter fact until the year 1906. In October, 1905, at defendant's demand, an expert machinist was sent by plaintiff to remedy the engine so that it would do the work for which it was sold. The expert worked with the engine and started the same. It apparently did good work, and the expert assured defendant that the engine was in perfect order and would do the work for which he had purchased it, which statement was believed by the defendant. Relying on such statement, defendant paid the sum of $679 and executed

the notes in suit, together with the mortgage, and gave to plaintiff a certificate stating that such engine was working satisfactory to defendant. That soon after the expert left, although the engine was being properly managed, the defendant discovered that the defects had not been remedied, that the engine was not working satisfactorilv, would not do good work under proper management, and was entirely inadequate and unsuitable to do the work for which it was purchased. Defendant thereupon notified plaintiff that said engine was defective and of no use to him and demanded that plaintiff remedy the defects, replace it with a new engine, or that this defendant would return the same. Plaintiff refused to remedy the engine, replace it with another engine, or to receive said engine back. The notes and mortgage sued on were executed under the belief that the engine was adapted for the purpose for which it was purchased, and that it was in perfect running order and would work satisfactorily. Defendant relied upon the statement made to him to the above effect. Plaintiff was either mistaken as to the facts, or represented such false facts knowing same to be untrue, for the purpose of inducing defendant to execute said notes and mortgage, and plaintiff knew that this defendant would not have paid the money and executed the notes and mortgage and the above-mentioned certificate, if he had not believed the representation of the plaintiff's agent to the effect that such engine was perfect in all respects and would do the work for which it was purchased. The sole consideration for such notes and mortgage was the said engine. The answer also contained allegations amounting to counterclaims.

The case being called for trial, and it being conceded that defendant had the affirmative, the defendant, being called as a witness to testify, was asked a question. At this time the plaintiff objected to the receipt of any evidence under the answer, except in support of the counterclaim, on the ground that such answer, outside of the counterclaim, does not state facts sufficient to constitute a defense. This objection was sustained, and the defendants excepted. Defendant elected to stand on this ruling, dismissed the counterclaim, and findings and conclusions were

prepared on behalf of plaintiff. Judgment was duly entered, and the defendant W. F. Lewis has appealed to this court from such judgment, assigning as error the ruling of said court sustaining the objection to the introduction of any evidence under the answer.

Defendant contends that the original order was not an executed sale, but an agreement for sale, and that, as the engine did not comply with warranty, defendant had a right to rescind such order; that, whether defendant rightfully or wrongfully refused to accept the machinery and settle for it as provided in the written order, it is conceded that he did so refuse and that he accepted the machinery under a subsequent contract made about May 1, 1904; that, under this new contract, certain changes were to be made in the engine, and the engine was to be put in proper condition for the work for which intended, defendant to have right to try engine, and, if same did not work satisfactorily, plaintiff was to remedy it so that it would so work, or replace it with new engine, otherwise defendant could return engine if he so elected; that when the new notes were given, and money was paid, it was a mere continuance of the above special contract, and not the making of a new one; that, the engine failing to comply with said special contract, defendants have never lost their rights thereunder; and that plaintiff, having refused to accept a return of the engine, cannot recover on the notes, though such engine has never been actually returned.

It is the contention of plaintiff that it cannot be held that there was a new contract entered into between defendant and plaintiff's agent binding upon plaintiff, for the reason that such agent had no authority, actual or ostensible, to make such a new contract, and did not even have power to modify the written contract; that, without such authority, there could be no contract entered into binding upon plaintiff unless such contract was ratified, and no ratification was pleaded. This certainly is the law. If the engine was not up to warranty, the defendant had a right to refuse to accept it. He pleads the order he signed and does not claim to have been ignorant of its contents. He therefore knew that the agent could not let him have the engine under any other conditions than those found in the order, and that therefore,

if he undertook to provide for such conditions, such new agreement would be absolutely invalid until ratified, and there could be no ratification by the plaintiff until it had knowledge of the facts. Ordinarily, knowledge of the agent becomes knowledge of the principal; but this cannot apply when the agent is attempting to act beyond his authority, either actual or ostensible, and the party with whom he is dealing knowns he is so acting without authority, and where, as in this case, there is absolutely nothing to notify the principal that the agent has attempted to enter into a new or modified agreement. Shull v. New Birdsall Co., 15 S. D. 8, 86 N. W. 654; Larson v. Minneapolis T. M. Co., 92 Minn. 62, 99 N. W. 623. It must therefore be held that the defendant took the machinery under the conditions of the warranty found in the written order, and he utterly failed to plead facts showing that he had not lost his right of rescission under the terms of such order. His attempted rescission was a nullity, and the answer interposed no valid defense.

It is further clear that the answer was so defective that the court was justified in excluding testimony thereunder. No request was made to be allowed to amend same, and it is apparent that it could not be amended so as to state a defense.

The judgment of the trial court is affirmed.

SMITH, J., took no part in this decision.