## COLEAN MANUFACTURING COMPANY v. M. L. FECKLER, J. J. Feckler, Copartners as Feckler Bros., Leroy A. Wheeler, and Robert Moffat.

(126 N. W. 1019.)

**Sales — Acceptance — Waiver of Defects.**

1. The note sued on was given for the purchase price of a threshing

Note.—The question of the right of a buyer to retain goods and defeat an action for the price, on discovering that the goods do not comply with the requirements of the contract, is considered in a note in 4 L.R.A. (N.S.) 1167.

machine sold by plaintiff to the defendants, Wheeler & Moffat, upon a written order or contract. The order given by defendants Wheeler & Moffat contained a provision that, should any part of the machinery be defective, it should be returned immediately by Wheeler & Moffat to the place where it was received. Also the following provision: "If inside of six days after the date of its first use it shall fail in any respect to fill the warranty, written notice to be given immediately by the purchaser to the plaintiff at its office in Peoria, Illinois, by registered letter, stating particularly in said letter and notice, what and wherein it failed to fill the warranty." Also the following provision: "No agent or any other person shall be authorized to make any different warranty or vary or modify any of its terms or waive any of the conditions of this one, and any attempt to do so shall not bind the company or affect this contract." At the time of the receipt of the machinery at Wimbledon, and before it was unloaded from the car, it was discovered that certain belts belonging to the separator were water-soaked so as to be unfit for use. It was also discovered that some other parts of the threshing machine were missing. Defendants allege in their answer that Wheeler & Moffat were induced to execute and deliver to the plaintiff this note and two others, and did so execute and deliver said notes, solely upon the representation of the plaintiff's agents that the missing parts should be immediately furnished, and that they accepted the said threshing machine upon the condition that all the missing parts should be immediately furnished and delivered to the defendant Wheeler & Moffat, and upon no other condition, and that the defendants Wheeler & Moffat took the threshing machine, believing in and relying upon the said representations of the plaintiff's agents and kept the same for a few days. But that, notwithstanding such representations, the articles were never furnished and delivered by the said plaintiff, and the defendants Wheeler & Moffat returned the threshing machine to plaintiff's agents. As a matter of fact they kept the machine for about 30 days. At the close of the evidence, on motion of plaintiff's counsel, the district court directed a verdict for plaintiff for the amount due on the note.

**Sales — Acceptance — Waiver of Defects.**

2. The trial court by its order set aside such verdict, upon the ground that the motion to direct a verdict was not properly granted. *Held*, that the order setting aside the verdict and granting a new trial is erroneous.

**Sales — Delivery — Evidence.**

3. *Held*, that there was a delivery of the threshing machine under the written order.

Opinion filed April 11, 1910. Rehearing denied June 21, 1910.

Appeal from District Court, Barnes county; *E. T. Burke,* J.
Action by the Colean Manufacturing Company against M. L. Feck-

ler. and others.    Verdict directed for plaintiff, and, from an order granting a new trial, plaintiff appeals.

Reversed with directions.

*J. W. Tilly* and *Turner, Wright & Lewis,* for appellant.

*Parks & Olsberg,* for respondent.

CARMODY, J.    This is an action upon a promissory note of which the defendants Wheeler & Moffat are makers.    At the time of the execution and delivery of the note, defendants Feckler Brothers indorsed thereon their written guarantee of the payment of the note at maturity or at any time thereafter, waiving protest, etc.    This note was given as part of the purchase price of certain threshing machinery purchased by the defendants Wheeler & Moffat from the plaintiff, under a written order or contract.    This is an ordinary order commonly used in the sale and purchase of threshing machinery in this country.    The order was given through Feckler Brothers, who were local agents at Wimbledon for the plaintiff.    The authority of these agents was evidenced by a written agency contract, and was limited to receive orders for machinery and forwarding them to the plaintiff for approval, to receiving and delivering machinery and making settlement thereof in accordance with the terms of the order given for such machinery.    The order given by defendants Wheeler & Moffat contained a provision that, should any part of the machinery be defective, it should be returned immediately by Wheeler & Moffat to the place where it was received.    Also the following provisions:    If, inside of six days after the date of its first use, it shall fail in any respect to fill the warranty, written notice to be given immediately by the purchaser to plaintiff, at its office in Peoria, Illinois, by registered letter, stating particularly in said letter and notice, what and wherein it failed to fill the warranty.    Also the following provisions:    "No agent or any other person shall be authorized to make any different warranty or vary or modify any of its terms, or waive any of the conditions of this one, and any attempt to do so shall not bind the company nor affect this contract."    At the time of the receipt of the machinery at Wimbledon and before it was unloaded from the car, it was discovered that certain belts belonging to the separator were water soaked, so as to be unfit for use.    It was discovered that the rig was short in the following

items, to wit: One northwest belt guide, one flax sieve, one truck, wagon and tank, double trees and neckyoke for the separator, screen for shoe and straw grates for the engine. Feckler Brothers at once notified the plaintiff by letter of the water-soaked condition of the belts and of the missing parts, and notified the plaintiff that they would return the belts to it by freight, and that they, Feckler Brothers, could furnish the buyers new belts, which they did. The tank and truck came a few days after; the other parts, the sieve and grates, did not come until after the defendants, Wheeler & Moffat, returned the machine to Wimbledon, which was about thirty days after they took it out; the northwest belt guide was never furnished. Defendants alleged in their answer that Wheeler & Moffat were induced to execute and deliver to the plaintiff this note and two others, and did so execute and deliver said notes solely upon the representations of the plaintiff's agents that the missing parts, hereinbefore referred to, would be immediately furnished to said Wheeler & Moffat, and that they accepted the said threshing machine upon the condition that all the articles, hereinbefore referred to, should be immediately furnished and delivered to the defendants Wheeler & Moffat, and upon no other condition, and that defendants Wheeler & Moffat took the threshing machine, believing in and relying upon the said representations of the plaintiff's agent, and kept the same for a few days. But that, notwithstanding such representations, the articles were never furnished and delivered by the said plaintiff, and the defendants Wheeler & Moffat, returned the threshing machine to plaintiff's agents, and that plaintiff afterwards appropriated such machine to its own use. In January after the return of the machinery, the plaintiff foreclosed its mortgage thereon, and, having duly credited the proceeds of the sale, brought this action on the note remaining unpaid. There was a jury trial, which resulted in a decided verdict and judgment for the plaintiff, for the entire amount of the note and interest.

The defendants afterwards, on a settled case, moved for a new trial, which was granted. This appeal is from such ruling.

The only error assigned in this court is that the court erred in granting defendants' motion for a new trial.

At the trial, after introducing the note and the notary's certificate of protest of said note in evidence, plaintiff rested its case, and in

rebuttal introduced in evidence Exhibit G, the chattel mortgage given by defendants Wheeler & Moffat to plaintiff, and Exhibit H, the report of sale under the foreclosure of such chattel mortgage. During the cross-examination of defendants' witnesses, plaintiff introduced in evidence Exhibits C, D, E, and F. Exhibit C is a letter written by Feckler Brothers to George Edgerton, the plaintiff's manager at Fargo, of date November 23, 1905, inclosing a bill of $23.79, part of which was in connection with the sale of the threshing machine to Wheeler & Moffat. Exhibit D is the itemized bill inclosed in Exhibit C. Exhibit E is a letter dated August 30, 1905, by Feckler Brothers to plaintiff, inclosing the note sued on and two others, an original and duplicate mortgage, an original and duplicate copy of earning contract, all given by Wheeler & Moffat in settlement for the threshing machinery. Exhibit F is a letter dated July 5, 1905, by Feckler Brothers to plaintiff, at Fargo, inclosing order of Wheeler & Moffat for the threshing machine.

Defendant M. L. Feckler testified that when they unpacked the threshing machine in the latter part of August, 1905, they found the belts, thereinbefore mentioned, rotten and water soaked and the other parts, hereinbefore mentioned, missing. They immediately notified the company by letter, Exhibit 3, introduced in evidence by defendants, which is as follows: "On unloading and unpacking the rig you shipped us for Messrs. Wheeler & Moffat we find the following belts that were packed in the blower are badly soaked and rotted, and the purchasers have refused to accept them as they are unfit for use; *viz.,* one 20 ft.-6″ leather belt, one 19 ft.-4″ leather belt, two 12 ft.-2″ leather belt. These belts we will return to you by freight, so that you can see the condition they are in. If acceptable we can furnish the buyers with new belts, as we carry a stock of leather belting, but it is possible that you would prefer to furnish them yourself. If this is the case we would ask you to ship us the above-described belts as soon as possible by freight; in either case we would ask you to advise us what to do with them. We also find the rig is short of the following items specified in the order, *viz.:* one northwest belt guide, one flax sieve, one truck wagon and tank, double trees and neck yoke for separator, screen for shoe, and straw grates for the engine. As we

must have these parts at once, we would ask you to make an immediate shipment of the same and follow with tracer."

He also testified that Wheeler & Moffat were present, refused to take the machinery for the reason that it was incomplete, but finally took it on being promised by Feckler Brothers that the missing parts would be furnished immediately. The tank and truck came about five days after they took the machine; the other parts, except the northwest belt guide, after the machine was returned. The rotten belts were furnished by Feckler Brothers. The machine was pulled in and left in Feckler Brothers yard, but they exercised no control over it except to see that it was all there. They sent J. J. Feckler to Fargo to see the head man there. They, Feckler Brothers, furnished defendants, Wheeler & Moffat, with old flues to make grates. One of the company's experts came out and endeavored to make a grate and fix the machine, but that it was a failure. That defendants Wheeler & Moffat attempted to operate the threshing machine for a period of about thirty days, and threshed for three different persons.

J. J. Feckler testified to about the same thing, and in addition that he telephoned the agent at Fargo with whom they had all their dealings, about the parts; that the machine was refused until they were furnished; and that the agent at Fargo said to go ahead and have them take out the machine, and he would furnish the missing parts forthwith. That he, Feckler, went down to Fargo and saw Edgerton, the agent, about sending out experts, and Edgerton said to have the purchasers take out the machine, and get along the best they could until the company could get it in order. That plaintiff would do everything in its power to get the machine in running order, and furnished these parts to keep the machine out.

Defendant Robert Moffat, testified that he was an expert thresher, that Wheeler took the machine out but could not make it work. That plaintiff's expert was there and could not make it work. That when they took the machine out he knew they could not thresh without grates, knew some of the parts were gone. Feckler Brothers induced them, Wheeler & Moffat, to settle for the machine by promising that the defective and missing parts would be furnished. The defendants introduced in evidence Exhibit 1—the agency contract—and Exhibit 2—

20 N. D.—13.

the order given by defendants Wheeler & Moffat for the threshing machine.

The evidence further shows that the defendants Wheeler & Moffat took the threshing machine and settled for it the same day it arrived in Wimbledon. The defendants Wheeler & Moffat knew when they settled for the threshing machine that the belts were so water soaked as to be unfit for use, and knew which parts were missing; they may have had the right to refuse to receive the machinery, but this they did not do. They received and settled for it, knowing the condition that it was in. The belts were replaced by new ones, and the tank and truck were received by them shortly after making the settlement. The purchasers, by taking the threshing machine and settling for it in its then condition, elected to rely upon their contract with plaintiff. Defendants Wheeler & Moffat had the right to expect plaintiff to furnish all the missing parts. Plaintiff not having done so, Wheeler & Moffat may have had an action against plaintiff for damages, but by receiving and settling for the machinery, with knowledge of its defective condition, they waived their right to rescind the contract on that ground. There is no fraud set up as a reason for rescinding the contract. Neither is there any claim that defendants Wheeler & Moffat made any attempt to comply with the provisions of the contract. The promise, if any, made by Feckler Brothers, or by Edgerton to defendants Wheeler & Moffat, that plaintiff would furnish the missing parts and replace the belts, did not constitute a new contract, as the contract already existing between the plaintiff and the defendants Wheeler & Moffat required the plaintiff to furnish all the missing and defective parts and put the threshing machine in running order. The same contract required defendants Wheeler & Moffat to give plaintiff notice by registered letter and otherwise, of the failure of the threshing machine to properly perform the work for which they purchased it, but they never gave such notice. Neither was the plaintiff ever notified that Wheeler & Moffat refused to take the machine or that Feckler Brothers or Edgerton made Wheeler & Moffat any promises to induce them to take the machinery. The defendants contend that the buyers refused to accept the machinery and make settlement under the written order, and, by so refusing to take the threshing machine, their contractual relations under the written contract were terminated. That

the subsequent conditional taking of the machinery and the signing of the notes were not under the terms of the written contract but were under a new and different contract. In this contention they are in error. The case of Nichols & S. Co. v. Paulson, 6 N. D. 400, 71 N. W. 136 and the case of the Coleman Mfg. Co. v. Blanchett, 16 N. D. 341, 113 N. W. 614, cited by defendants, are not in point. In the case of Nichols & S. Co. v. Paulson, one Spearing gave a written order to the general agent of plaintiff for the purchase of a steam threshing outfit. As part of the consideration, Spearing was to deliver to plaintiff a second-hand engine. Spearing signed one of the printed contracts, of the character generally used by machine companies. Spearing claimed that the printed contract and the notes he was to execute for the balance of the purchase price of the threshing machine, aside from the second-hand engine, were to be placed in the First National Bank of Hillsboro, and left there until he had an opportunity to try the machine for ten days, and if, upon such trial, it proved satisfactory, then the contract and notes should be delivered. If the trial was unsatisfactory, Spearing should return the outfit. When the machinery came to Hillsboro, Spearing refused to receive it, except conditionally upon trial, in accordance with what he testified was the oral contract with the general agent, and did not receive the machine until the notes and contract were placed in the First National Bank of Hillsboro, not to be delivered until both parties so directed. Spearing returned the rig and purchased another rig from John E. Paulson and Brother, for part payment of which he delivered them the second-hand engine in controversy. Nichols & Shepard then brought an action to recover possession of the engine from Paulson. The court says: "When the machinery forwarded by plaintiff for Spearing reached Hillsboro, Spearing refused to received the same, except conditionally upon trial, in accordance with what he swears was the oral contract with the general agent. Plaintiff claims that the general agent had no authority to make such contract, as Spearing well knew, by direction to agents printed upon the contract which he signed. We may grant that to be true. Nevertheless, the fact remains that Spearing refused to receive the outfit upon any other terms than upon trial. If the contract that he had signed and left with the general agent had been in fact delivered, so as to become operative, then this refusal

was a direct breach of such contract. Such contract was executory, and no title to the property passed until the buyer accepted it. Rev. Codes, § 3553. The refusal to accept may have given plaintiff a right to recover damages, but the property remained the property of the seller, and the title to the second-hand engine that was to be given in part payment remained in the buyer. These conditions existing, the local agents delivered the outfit to Spearing upon trial, in accordance with what he insisted was the contract. Such delivery was, of course, conditional, and passed no title. Plaintiff insists that the local agents were, to the knowledge of Spearing, unauthorized to make such conditional delivery. This may be granted. It may be true that plaintiff might have retaken the outfit immediately upon such delivery. But that fact could not convert the conditional delivery which was made, into an unconditional delivery that was not made. It could not cast upon the buyer title to property that he refused to accept. The title both to the threshing outfit and the second-hand engine remained just as it was prior to such conditional delivery."

See also Nichols & S. Co. v. First Nat. Bank, 6 N. D. 404, 71 N. W. 135.

In Colean Mfg. Co. v. Blanchett, which was an action for the foreclosure of a chattel mortgage, the defendant signed an order for the purchase of a threshing machine and attachments from the plaintiff. The order was an absolute one, and contained no conditions except the conditions connected with the warranty provisions. The machine was shipped to Grand Forks. Prior to the delivery to the defendant he claimed that a new contract was entered into between him and plaintiff through its agents. The new contract was oral, and provided for a sale on the same terms as the written order, except that he had a right to try the machine and return it if it did not do satisfactory work. He testified that the notes and mortgage were signed on this express condition, and that they were not to be delivered to plaintiff at all until after a satisfactory trial, but were to be placed in some bank in Grank Forks for final delivery to plaintiff or defendant dependent upon the result of the trial. Plaintiff claimed that a written contract could not be changed by an oral agreement, unless the agreement was wholly executed. That the plaintiff was not bound by any oral agreement or understanding made by its salesman at the time of the delivery

of the machinery, in conflict with the terms of the written order, not brought to the knowledge of the plaintiff and agreed to by it. That a written contract cannot be varied by parol, unless executed by the parties after its terms had been varied by agreement. The court held that those principles had no application, as the machine was delivered for trial only under the oral contract. As hereinbefore stated, defendants Wheeler and Moffat might have refused to accept the machinery, but, having accepted it, knowing its condition, they have no remedy except under the terms of the written contract. See Reeves v. Lewis (S. D.) 29 L.R.A.(N.S.) 82, 125 N. W. 289.

Finding no error in directing a verdict for the plaintiff, the order setting aside such verdict and granting a new trial is reversed, and the District Court directed to enter judgment for the plaintiff upon the verdict. All concur.