# EDWARD WESTBY v. J. I. CASE THRESHING MACHINE COMPANY.

### (132 N. W. 137.)

**Sales — Contract — Delivery — Subsequent Agreement — Rescission.**

    1. Plaintiff signed a written order for the purchase of a threshing machine of defendant. On its arrival plaintiff could not give security for its purchase price in compliance with the order, and delivery was not made. Defendant's agent for purposes of delivery and collection then sold plaintiff the machine under an oral contract at a reduction for cash, the machine to be tried and if not satisfactory returned, and pending trial the cash price was deposited with such agent. The machinery proved worthless. The agent transmitted the money to the defendant, who retains it. Plaintiff rescinded the oral contract of sale and recovered judgment for the amount paid, including freight.

    *Held*, the delivery under the oral contract was not a delivery of the machine under the written order, notwithstanding that such order by its terms forbade the agent substituting a new contract of sale therefor, and that the machine was delivered under a new and independent oral contract of sale.

**Sales — Acceptance — Delivery for Trial — Rights of Purchaser — Agent's Authority.**

2. That under the oral contract plaintiff had the right to test such machinery by trial, and its acceptance for such purposes was not an acceptance under the written order, even though the company's agent had no authority to make an oral contract of sale, or permit such trial before acceptance of the machinery.

**Sales — Principal and Agent — Ratification — Acceptance of Consideration.**

3. Where the machinery is delivered under a new and independent oral contract of sale, under which the company receives a purchase price on such a sale, made by an agent in excess of the agent's authority, the company as principal must disaffirm the unauthorized sale, or they will be held to ratify the agent's acts and such sale under the oral contract.

**Sales — Rescission — Subsequent Oral Agreement — Construction.**

4. Where, after rescission of such an oral contract, action is brought by the purchaser to recover the purchase price, a written executory contract between the parties made prior to the executed oral contract, but under which written contract no delivery was ever had, the written warranties, and conditions as such, are not parts of the oral contract, unless made so by the terms of such oral contract itself; the executed oral contract entirely superseding in such particulars, as well as all others, the prior written executory contract. Therefore the written contract and the warranties therein contained, and the conditions provided under which it might be rescinded, including manner of rescission, are not parts of the oral contract, and can constitute no defense to an action for the purchase price based on rescission of the oral contract of sale, when delivery was had under such oral contract.

**Sales — Rescission — Pleading — Election — Practice.**

5. Plaintiff's complaint was prepared to permit proof of either a written contract of sale with rescission as provided for in such written contract, or to permit proof of an oral contract of sale and rescission thereof. Where no motion is made in advance of or on trial, to compel plaintiff to elect under which contract of sale he will submit proof, plaintiff has the right of choice, and may, as in this case, rely upon and prove such oral contract. The fact that plaintiff gave notice of rescission in the same manner provided in the written contract, and plead such rescission, does not of itself estop plaintiff from relying on the oral contract, where such notice is not inconsistent with a rescission of such oral contract.

Opinion filed May 27, 1911.

Appeal from District Court, Benson county; *Cowan,* Judge.

Action by Edward Westby against the J. I. Case Threshing Machine Company. Judgment for plaintiff, and defendant appeals. Affirmed.

*H. R. Turner,* for appellant.

Limitations upon an agent's authority, known to those dealing with him, are binding upon all.   David Bradley & Co. v. Basta, 71 Neb. 169, 98 N. W. 697; 31 Cyc. *1329; Seymour v. Wyckoff, 10 N. Y. 213; Cobb v. Dows, 10 N. Y. 335; McCracken v. San Francisco, 16 Cal. 591; Billings v. Morrow, 7 Cal. 172, 68 Am. Dec. 235; Dean v. Bassett, 57 Cal. 640; Puget Sound Lumber Co. v. Krug, 89 Cal. 237, 26 Pac. 902; Golinsky v. Allison, 114 Cal. 458, 46 Pac. 295; Nichols v. Bruns, 5 Dak. 28, 37 N. W. 752; Western Nat. Bank v. Armstrong, 152 U. S. 346, 38 L. ed. 470, 14 Sup. Ct. Rep. 572; O'Shea v. Rice, 49 Neb. 893, 69 N. W. 308; Bohart v. Oberne, 36 Kan. 284, 13 Pac. 388.

Failure to comply with written contract bars respondent from claiming breach of warranty.   J. I. Case Threshing Mach. Co. v. Ebbighausen, 11 N. D. 466, 92 N. W. 826; Trapp v New Birdsall Co. 109 Wis. 543, 85 N. W. 478; Heagney v. J. I. Case Threshing Mach. Co. 4 Neb. (Unof.) 745, 96 N. W. 175; Aultman & T. Co. v. Gunderson, 6 S. D. 226, 55 Am. St. Rep. 837, 60 N. W. 859; Fahey v. Esterley Mach. Co. 3 N. D. 220, 44 Am. St. Rep. 554, 55 N. W. 580.

*I. C. Davies* and *Buttz & Sinness,* for respondent.

One acting without notice as per contract waives the notice.   J. I. Case Threshing Mach. Co. v. Ebbighausen, 11 N. D. 466, 92 N. W. 826; Buchanan v. Minneapolis Threshing Mach. Co. 17 N. D. 343, 116 N. W. 335; Fahey v. Esterley Mach. Co. 3 N. D. 220, 44 Am. St. Rep. 554, 55 N. W. 580; Minnesota Thresher Mfg. Co. v. Lincoln, 4 N. D. 410, 61 N. W. 145; Briggs v. M. Rumely Co. 96 Iowa, 202, 64 N. W. 784; Peterson v. Walter A. Wood Mowing & Reaping Mach. Co. 97 Iowa, 148, 59 Am. St. Rep. 399, 66 N. W. 96; Peter v. Plano Mfg. Co. 21 S. D. 198, 110 N. W. 783; Baker v. Nichols & S. Co. 10 Okla. 692, 65 Pac. 100; Nichols & S. Co. v. Wiedemann, 72 Minn. 344, 75 N. W. 208, 76 N. W. 41.

The machine not having been accepted under the written order, agent could make a new oral agreement.   Colean Mfg. Co. v. Blanchett, 16 N. D. 341, 113 N. W. 614; Nichols & S. Co. v. Paulson, 6 N. D. 400, 71 N. W. 136; Hicks v. Aultman Engine & Thresher Co. 108 Minn. 327, 122 N. W. 15.

Notice in contract limiting agent's authority was not binding on Westby.   Olson v. Aultman Co. 81 Minn. 11, 83 N. W. 457; Gaar, S. & Co. v. Patterson, 65 Minn. 449, 68 N. W. 69; First Nat. Bank v.

21 N. D.—37.

Dutcher, 128 Iowa, 413, 1 L.R.A.(N.S.) 142, 104 N. W. 497; Peter
v. Plano Mfg. Co. 21 S. D. 198, 110 N. W. 783; Pitsinowsky v.
Beardsley, 37 Iowa, 9; D. M. Osborne & Co. v. Backer, 81 Iowa, 375,
47 N. W. 70; Blaess v. Nichols & S. Co. 115 Iowa, 373, 88 N. W.
829; Canham v. Plano Mfg. Co. 3 N. D. 229, 55 N. W. 583; Nichols
& S. Co. v. Paulson, 6 N. D. 400, 71 N. W. 136; Colean Mfg. Co. v.
Blanchett, 16 N. D. 341, 113 N. W. 614.

Goss, J.   This action was brought to recover the purchase price paid
defendant for a Case threshing machine separator, with attachments
of wind stacker, feeder, band cutter, and weigher, in all of which plain-
tiff paid defendant on receipt of said machinery, on October 2d, 1905,
including freight, the sum of $1,064.75.

Plaintiff's complaint alleges the sale to him by the defendant of the
foregoing articles of machinery, forming a complete threshing machine;
that they were of the make and manufacture of the defendant com-
pany, and by them made and manufactured for sale, and sold to plain-
tiff to be used for the purpose of threshing and separating grain, and
were for that purpose purchased; that said machine was warranted as
an inducement to the purchase thereof and as a part of the consider-
ation therefor; "that the said threshing machine was properly con-
structed of good material, and was fit for the purpose for which it was
made and manufactured and offered for sale, and for the purpose for
which it was sold to the plaintiff, that is, to use for the threshing and
separating of grain, and that the said threshing machine would do good
work when used for that purpose;" that said machine would thresh
and separate grain to the satisfaction of the plaintiff; and that should
such machine fail to thresh and separate grain to the satisfaction of
the plaintiff, that it could be returned to the defendant and the pur-
chase price would be refunded plaintiff; that such agreement was in-
ducement to plaintiff to enter into such contract of sale, and was a part
of the consideration therefor.   That, relying upon these representations
and warranties, the plaintiff bought the threshing machine and paid
defendant as the purchase price the sum aforesaid, and the threshing
machine was delivered him.   That the threshing machine was poorly
constructed of defective material, and not fit for threshing and separat-
ing grain; that it was of faulty construction; that defective material
was used in its construction; that it continually broke down in its vari-

ous parts and clogged up, and wholly failed to do good work as a threshing machine, in the threshing and separating of grain; and wholly failed to comply with said warranties, under which it was sold.

As soon as plaintiff discovered the defects so ascertained by tests of the machinery, he notified the defendant company, by registered letter addressed to it at Racine, Wisconsin, of the failure of the machine to conform to the warranties under which it was sold, and of his rescission of the contract of sale; and immediately thereafter redelivered the threshing machine to defendant's agent upon the right of way at Maddock, where such machine had been purchased and received by this plaintiff from the defendant. That such return was made on or about October 17, 1905, and on said date defendant was notified thereof by registered letter addressed to it at Racine, Wisconsin; that ever since said machine has been in the possession of the defendant; that upon the return of the rig the plaintiff demanded the payment to him by the defendant company of the amount sued for, the purchase price and freight aforesaid, with which demand defendant has refused to comply.

Defendant, in answer to plaintiff's complaint, admits the sale and receipt of the money and delivery of the machinery, but alleges the sale thereof was under a written contract consisting of a written and printed order signed by plaintiff and accepted by defendant, and pursuant to which the machinery was delivered. That under said written contract defendant warranted said machinery to be of good quality and workmanship, durable under good care, and able to do good work under ordinary conditions; and recites at length the order and warranty under which the defendant company alleges the machinery was sold to plaintiff.

The trial was had to a jury, plaintiff recovering judgment for the full amount sued for.

Defendant claims that plaintiff by his pleadings has relied upon the written contract and performance thereunder, and that proof of an oral contract is without the pleadings and beyond the issues joined under them. In this conclusion we cannot agree with appellant. Contrary to his contention, the complaint alleges the sale to have been made at Maddock, North Dakota, on October 3, 1905, of a complete threshing rig, and sold under an express warranty, with subsequent breach thereof,—all set forth in detail.

It is true that defendant as to the oral contract pleads a rescission with notice thereof by registered letter to the company's office at Racine, Wisconsin, but in the same connection he pleads that the machine was purchased at Maddock, North Dakota, and for the sum actually paid by the deposit and freight. It is not until we inspect the answer that any written contract or terms thereof are found in the pleadings in the case; and it is only from the proof that we discover that the written contract was executed at Fargo, North Dakota, in September, while the oral contract, upon which it is plain the suit is brought, establishes a transaction on October 2d, at Maddock, with the machinery at such place. It is noticeable that the complaint does not mention a written contract. Plaintiff by his pleadings avoided limiting his proof. Appellant's contention that plaintiff has sued on the written contract is incorrect.

Upon the trial the facts stand undisputed; briefly recited they are set forth in the following statement: On September 28, 1905, plaintiff, after having been solicited by one Cooper acting as sales agent for defendant company, to purchase this machinery, signed the usual threshing machine order or contract of purchase of the same in the defendant company's office at Fargo, North Dakota. The order provided that the plaintiff as purchaser would receive at Maddock, North Dakota, such machinery on its arrival, and pay therefor the freight to said point and the further sum of $1,070, by executing three notes, due October 1st, 1906, 1907, and 1908, respectively, aggregating said amount, and secure the notes by a first mortgage on the machinery sold and also a first mortgage on a Reeves engine and tank owned by plaintiff, "and failing to pay said money or execute and deliver said notes and mortgage, this order shall, at the company's option, stand as purchaser's written obligation, and have the same force and effect as notes and mortgage for all sums not paid in cash, and shall discharge the company from all warranty." Said order further provided that the machinery was purchased upon and subject to the conditions printed in the order, and none other, which conditions consisted of the warranty as pleaded in the answer. The order also provided that after a trial of ten days by the purchaser, if the machinery should fail to conform to the warranty, written notice should be given to the defendant company at Racine, Wisconsin, and also to the agent from whom received, stating in what parts and wherein it

failed to fulfill the warranty, and a reasonable time thereafter was to be given the company to send a competent person to remedy the difficulty and for replacement of any defective parts. The order stipulated for a second notice of defective working of any parts so replaced, and for further substitution therefor at the option of the company, and that the failure to give notice should absolve the company from liability under the warranty; and providing that every article was sold for a specified sum named in the order, and that the contract for sale was as to each article sold, a divisible one; that failure to settle on delivery of the goods ordered under the contract, or any change in the printed terms of the warranty by any person whomsoever, agent of the company or otherwise, by addition or waiver, or any abuse, misuse, or any exposure of the machinery, would discharge the company from all liability whatever; and that no representation made by any person as an inducement to obtain the order for purchase should bind the company, the purchaser waiving notice of the acceptance of the contract by the company; that any failure to secure the notes as contracted in the order, or failure to pay the same, should constitute a full release of all warranty. A further proviso was contained in the contract to the effect that the purchaser in case of crop failure could cancel the contract upon payment of 10 per cent of the purchase price, or that, in case he should decline to accept such machinery, he should first pay the freight and 10 per cent of the purchase price, this "as compensation to the company for soliciting, investigating, and taking of the order." Embodied in the order and printed in large type was the following: "This order must be signed by all parties before delivery of goods; it is taken subject to approval, and is to be sent to the company for acceptance or rejection No person has any authority to waive, alter, or enlarge this contract, or to make any new or substituted or different contract, representation, or warranty. Mechanics and experts are not authorized to bind the company by any act, contract, or statement." This order was signed by the plaintiff at Fargo, on September 28th, in the presence of the agent Cooper, designated in the order as the salesman. At the time the order was signed and delivered by plaintiff to the company, it had a paragraph attached providing a discount for cash payment of the contract price, which was not filled out, but was thereafter, by the company or its agents, unauthorized by the plaintiff, completed to read as follows: "If all notes herein described are fully

paid in cash on or before November 1, 1905, a discount of $97.50 will be allowed." The order, with the exception of this provision, was written in ink, and this provision thereafter penciled in; but the copy of the order delivered plaintiff remained in blank as to date and amount of cash discount.

The undisputed testimony establishes that the company shipped the machinery under the order to Maddock, it arriving there August 2, 1905; it being accompanied by the sales agent, Cooper. On its arrival it deleveloped that the threshing engine which, under the terms of the order, was to be given as security with the property sold, was already mortgaged, and on account of the serious illness of the person to whom payment would be made, and who was obliged to discharge the mortgage, its discharge could not be obtained, and plaintiff could not comply in such respect with the terms of the order; the defendant, by its sales agent, refused to deliver the machine until security in strict conformity with the order was given. Plaintiff offered to deposit $1,200 worth of wheat tickets as additional security that he would procure the discharge of the mortgage, which offer was refused; said wheat tickets were then refused to be taken in lieu of the mortgage; the sales agent insisted upon exact compliance with the terms of the order. Thereupon plaintiff was unable to purchase the machinery under the order, and the machinery was not delivered. Thereafter plaintiff made, and the agent accepted, a cash offer for the machinery, plaintiff offering to buy the same for cash if the defendant would warrant the machine and permit plaintiff five days' trial of it, that he could satisfy himself that it would run and do good work and stand up under strain, on the condition that if it would not he was to return the machinery to the defendant and get his money back. The money to be deposited would become the purchase price of the machinery, and if it proved satisfactory and did good work on such trial, plaintiff would keep it. The parties then negotiated as to where the money should be deposited, plaintiff desiring to deposit the money in a bank at Maddock, but Cooper objected to such "one-horse banks," and insisted that the money be deposited with the Case company, which he explained was "a much safer and stronger concern." This independent deal was closed by the plaintiff paying the agent Cooper $970 in cash, a discount of exactly $100 from the price mentioned in the order, and in addition thereto plaintiff paid the freight amounting to $94.75,—a total payment of $1,064.75,—under

the condition that the money was deposited with Cooper pending the trial of the machinery by five days' use thereof, which machinery was to be tested by such use by plaintiff, and upon his being satisfied therewith was to be kept by him; and in case of its failure to do the work for which it was purchased, it was to be returned at Maddock, and he should receive his deposit and freight money back from the agent Cooper, who in the meantime was to assist plaintiff in operating the rig, and act as a machinery expert in getting the same to do satisfactory work.

Upon trial the machinery proved defective in workmanship, design, and material, and utterly worthless as a threshing machine. Plaintiff and the agent Cooper worked with it for four days, during which time the rig thoroughly demonstrated its worthlessness. The evidence is that the machine could not be made to do the work for which it was sold, because of many reasons set forth in the testimony. Finally Cooper told Westby, "if it don't work to-morrow you can pull it in and get your money," and immediately disappeared between two days, with Westby's money, leaving Westby with the machine on his hands. Westby immediately registered a letter to the company at their head office, at Racine, Wisconsin, to the effect that "you are hereby notified that the steel separator 40 x 60, which I purchased of you on the 28th of September, 1903, has failed in quality of material and workmanship to fulfil the warranty given by you, and said separator is subject to be returned at once." Which letter was dated at Maddock and signed by plaintiff. Its receipt was entirely ignored by defendant company, although the return card shows such notice was received on October 12th by the defendant company at Racine, Wisconsin. On October 18th following, plaintiff registered a second letter to defendant company at Racine, Wisconsin, as follows. "I notified you some time ago that the steel separator purchased of you failed to fulfill your warranty. I also notified your local agents here, L. E. Foss and C. L. Cooper, but they didn't do anything; and I can't do anything with that separator, so I have hauled it in to Maddock, North Dakota, and have got another separator. I request you to refund my money and fix this up at once." This letter was also signed by plaintiff. This letter was followed by one from the company denying receipt of the first letter sent within the ten-days' period mentioned in the order, to which plaintiff replied referring to his letter of October 18th, demanding a refund

of his money and that the matter should be fixed up at once. No results following, this suit is brought, some years afterwards, to obtain the purchase price deposit and freight payment aforesaid.

The defendant company throughout the trial insisted that it was not bound by the unauthorized act of its agent Cooper, in his making the unauthorized sale; that it had never ratified the same; that the company had made the delivery under the written order, and had no knowledge of any other sale; that knowledge was imputed to the plaintiff by the terms of the order that no agent of the company had authority to change the order in any respect, or to deliver the goods until the order was signed and a settlement effected under the order and pursuant to the terms thereof; that its agent was but a sales agent, and that plaintiff had knowledge of his limited authority.

When confronted with the fact that the settlement had been for cash, admitted by the pleadings to have been received by the company, and for a different amount than was specified in the order, the company offered the original contract with the penciled discount provision therein, that it might be assumed that it had supposed the amount remitted was approximately the amount due under the contract, provided the plaintiff had availed himself of the cash discount by making cash payment,—to the effect that the receipt of such money should not be presumed a ratification by the company of the contract actually made by the agent to the plaintiff. The trial court submitted to the jury, under proper instructions, the question of whether the delivery of the machinery was made under a new contract of sale, made orally between plaintiff and the agent Cooper at Maddock, or whether delivery was made under the written order; and the jury found the delivery was made under the former, thereby eliminating from consideration the contract evidenced by the order. And the jury was justified in so finding. It is doubtful if there was any issue of fact in such respect for the determination of the jury. The proof was conclusive that the buyer did not receive the property under the written order, which contract as evidenced thereby remained wholly executory, and the party who had in part performed thereunder, the company, refused further performance. The agent would not deliver the machine until security as contracted for in the order was given, and evidently for some reason best known to himself refused to allow the order to be modified in any particular. The performance of the contract then was.

rendered impossible. A new contract was made between the agent and the purchaser, the property in the meantime remaining the property of the company. Under the written contract no delivery was ever made, hence no title over passed thereunder. In fact, under the new and substituted contract the machinery remained the property of the defendant, and thereunder title never passed. The money was deposited with the agent assuming to act for the company, instead of in a bank, but the money still remained, until the machine proved satisfactory, the property of this plaintiff. Had the agent embezzled the money, the company could have disaffirmed the unauthorized act of the agent and retained its machinery, as title to it never left the company. It was at the most but an agreement for sale for which the buyer could likewise, for breach of warranty, rescind the agreement. See Rev. Codes, 1905, § 5435. And the evidence shows the same was presumably done, and notice of rescission given the company, and the obligations of plaintiff from the sale to take the machinery terminated, with plaintiff's money, the subject of this action, in defendant's possession.

Defendant insists that no agent of the company had the right to make a new or substituted contract, or to alter or change the written one. This may be true; it does not affect the situation disclosed by the evidence. The parties acted under the oral contract, if at all, as no performance was had under the written one. In fact the oral contract amounted to no more than the written one, a mere contract of sale uncompleted by conditional delivery only. Nor does the act of the plaintiff in refusing to complete the written contract of sale result in its completion. The liability he would assume would be, in the absence of contract, liability for an action for damages. In the contract itself we find the measure provided for such liability. But in this action the company is not counterclaiming thereon, but instead stands or falls upon delivery or nondelivery under the written order. The right of the plaintiff to avoid the written contract is a right recognized by the fact that the contract itself has fixed and provided for a measure of damages in such case. In law every contracting party has a legal right, while it remains wholly executory, to breach a contract, being obligated to respond therefor in damages. In this instance the impossibility of performance occasioned the breach, and by no reasonable conclusion can we say that a breach of a contract operates as a performance of it.

But the defendant company contends it was lead to believe that plaintiff had performed under the written contract; that the plaintiff was aware of the limited authority of its agent, and that the company was lead to accept the money in ignorance of the real contract, and supposedly in ratification of a discount for cash under the written contract. This does not alter the situation; it does not and cannot change the fact. This corporation, like all corporations, could act only through some agent. It has acted, if at all, through an authorized agent, perhaps in a way unauthorized by the corporation; but the fact remains that the dealings of the parties made a new contract capable of ratification, under which delivery was made, and the delivery never was made under the written one; and the company must at its peril choose upon which contract it will rely. The parties make the contracts, not the courts. The courts cannot change title to property with resulting liability therefrom, merely because an agent has acted in excess of his express authority. The Code provision still remains of the same effect, that is, that so long as the contract remained executory, no title to the property passed until the buyer accepted it. N. D. Rev. Codes, 1905, §§ 4990, 4992. Nichols & S. Co. v. Paulson, 6 N. D. 400, 71 N. W. 136; Colean Mfg. Co. v. Blanchett, 16 N. D. 341, 113 N. W. 614.

This case is covered on all points by Colean Mfg. Co. v. Blanchett. The order and all the principal facts are identical in that and this case. Of the two the instant case is the stronger, in that the proof as to a separate oral contract providing for trial of the machine prior to its acceptance and payment therefor is undisputed, while such facts were in dispute in the case cited. In that case the testimony was in conflict as to whether the machine fulfilled the warranty, but in this its worthlessness is beyond question. Appellant, to escape the force of the Blanchett Case, argues that in said case Blanchett had insisted on the written order containing a provision for trial in advance of acceptance of the machine, and that to such extent the order did not evidence the contract, and because thereof, the court went behind the written contract and based its decision on the oral negotiations leading up to the written order; while in the case on trial plaintiff is suing on an oral contract made after the written order, and that accordingly Colean Mfg. Co. v. Blanchett is not authority in the instant case. Such is defendant's analysis of the case quoted,—but a careful examination

of the opinion shows the contrary. We quote therefrom as follows: "We do not deem this a very material question as we are satisfied that an oral contract was made after the written order was signed, but before the sale became completed by a delivery of the machine thereunder." "The machine was not accepted by defendant under the written order; it was accepted under a new and independent contract." "In this case, however, the written order was not complied with at all, but repudiated, for the reason that defendant claimed that he had a right under the original negotiations to test the working of the machine. Upon defendant's repudiation of the order, a new contract was entered into, and the defendant was given the right to do what he claimed should have been included in the written order." Then again, from the above case on the question of the authority of the agent to make such new and independent contract in the face of a provision in the written contract remaining unexecuted, as in the case on trial, we quote the following: "The question as to the authority of the agents to modify the written order does not therefore become relevant or material in this case. So far as delivery of the machine is concerned, it never became binding on defendant under the written order, as delivery was made under another contract." In the case cited the court refers to the former decision of Nichols & S. Co. v. Paulson, 6 N. D. 400, 71 N. W. 136, a case in which a conditional delivery was made by the local agents not in performance of the contract, but on their own responsibility, in which a similar claim of want of authority on the part of the agent to so act was made, as follows: "Such delivery was, of course, conditional and passed no title. Plaintiff insists that the local agents were, to the knowledge of Spearing, unauthorized to make such conditional delivery. This may be granted; it may be true that plaintiff might have retaken the outfit immediately upon such delivery. But that fact could not convert the conditional delivery which was made into an unconditional delivery that was not made. It could not cast upon the buyer title to property that he refused to accept." For another parallel holding from the supreme court of Minnesota, see Hicks v. Aultman Engine & Thresher Co. 108 Minn. 327, 122 N. W. 15, for the same cause of action, under the same claims by the respective parties, in all respects as is the case on trial. Relative to the provision in the written contract against its alteration or the substi-

tution of a new contract by any agent of the company, we read from the opinion the following:

"The provision in the written contract to the effect that the agent had no authority to agree to an abandonment of the written order, and to make an oral one for the sale of the engine, was so broad and general in its terms as to amount to a limitation upon the power of the corporation itself, and was therefore void." See also Reeves & Co. v. Younglove, 148 Iowa, 699, 127 N. W. 1017; Koester v. Northwestern Port Huron Co. 24 S. D. 546, 124 N. W. 740; Advance Thresher Co. v. Vinckel, 84 Neb. 429, 121 N. W. 431; First Nat. Bank v. Dutcher, 128 Iowa, 413, 1 L.R.A.(N.S.) 142, 104 N. W. 497.

In First Nat. Bank v. Dutcher the Iowa court, in passing upon the authority of agents of the company to devest it from responsibility for all acts by contracts prepared for such purpose, has the following to say: "The appellant is a corporation which can act only through agents and employees; it cannot devest itself of the power to waive a condition made for its benefit, and that power can be exercised only through some agent. These men were its servants working in its interest, and must be presumed to have had the authority usually exercised by other agents under similar circumstances. To say that its agents were vested with the mere naked power to sell and deliver, without any authority to waive or modify any term of the printed contract, would be, as is well said in the Pitsinowsky Case, 37 Iowa 9: 'To establish a snare by which to entrap the unwary, and enable principals to reap the benefits flowing from the conduct of an agent in the transaction of business intrusted to his hands, without incurring any of the responsibilities connected therewith.' " We cite, without applying, the rule of the Minnesota and Iowa court above advanced, as the written contract is not herein the contract of the parties, and but incidentally in this respect within the case. When contracts are made, whether written or oral, the courts must deal with them as contracts. On the construction of such contracts, see Advance Thresher Co. v. Vinckel, 84 Neb. 429, 121 N. W. 431.

Counsel for the appellant urge that this case is covered by Reeves & Co. v. Lewis, 25 S. D. 44, 29 L.R.A.(N.S.) 82, 125 N. W. 289; and Larson v. Minneapolis Threshing Mach. Co. 92 Minn. 62, 99 N. W. 623; and Vallancey v. Hunt, 20 N. D. 570, 34 L.R.A.(N.S.) 473, 129 N. W. 455; and Shull v. New Birdsall Co. 15 S. D. 8, 86 N. W.

654; and Colean Mfg. Co. v. Feckler, 20 N. D. 188, 126 N. W. 1019. But to this we cannot agree. In the cases cited the decision in each instance is based upon the crucial fact that the sale was completed by a delivery under the order. In this case plaintiff's doom would have been sealed, at least so far as ingenuity and skill could by contract create liability on the one hand, and avoid responsibility on the other, had delivery been made under the written contract instead of under the oral one. If delivery had been made under the order, the terms of that written contract would have been put in force. But an executory contract remains such, and the fact that the parties may in writing contract in a manner whereby the limited powers of the agent are recognized for the purposes of the transaction evidenced by the contract, it is not for the courts to extend this feature any more than other provisions of the executory contract, to independent transactions, simply because the same subject-matter may be involved, or the written contract may account for the presence of the machinery at the place where in an emergency the agent assumes to deal, and is dealt with in the capacity of a general agent or with greater powers than he actually possesses. Such an oral contract, even when made by the company's unauthorized agent, under such conditions, if ratified, is binding according to its terms, not according to the terms of the written one superseded thereby.

Appellant urges that the notices given by registered letter to the defendant company were given under the written contract, and bind him to the order, and estop him from denying the delivery thereunder. The same was claimed in Colean Mfg. Co. v. Blanchett, and the following from the opinion in that case disposes of the appellant's contention in this: "It is true that the defendant gave notices to the company of the failure of the machine to work in the mode provided for in the order, and did some other things that would indicate that he was endeavoring to comply with the terms of the written order. We do not think that these facts show that there was no oral contract. The written contract contained a warranty, and defendant had in his hands a copy thereof, which specified what should be done by defendant in case of a breach of the warranty.

Under the oral contract, also, the machine was warranted to do good work. Although it was not incumbent on defendant to serve these notices under a delivery for trial purposes, still it is not a fact

that shows there was no oral contract. The defendant might well have thought it necessary to give these notices, although under the oral contract it was not necessary." This is likewise true under the evidence in this case.

Plaintiff is an experienced thresher, and in his evidence shows that he relied upon the company fixing the separator or making the matter right. An additional reason was the absence of Cooper, which make it imperative that the plaintiff himself notify the company direct. His first letter imparted notice to the company that the separator was subject to return at once, and shortly thereafter by mail he demanded a refund of his money. We see nothing in this inconsistent with the actions of the ordinary individual under the same circumstances. In this connection the company parted with nothing, suffered no injury. They could not have been misled in any particular. It is plain that plaintiff has done no act upon which an estoppel can be predicated.

Another reason appears for the pleading of the notice. Plaintiff may have endeavored to bring himself within the rule of J. I. Case Threshing Mach. Co. v. Balke, 15 N. D. 206, 107 N. W. 57, and similar cases, as to notice and rescission, so as to enable him to be in a position to urge rescission by such notice of the written contract of sale, should the court have held the written order to have been the contract between the parties. Plaintiff cannot be criticized for this. Safe pleading demands that every cause of action and every right of recovery regarding the same be set forth; that the rights of the parties be fully determined upon the merits of the controversy in litigation. Holding as we do, and as did the trial court, that the oral contract is the one under which delivery of the property was made, we have eliminated thereby the question of rescission of the written contract, or sufficiency of notice to accomplish the same.

While the abstract shows many other specifications of error as to rulings on the admission of evidence during the trial and instructions to the jury, all are abandoned, appellant in his brief assigning only error in the particulars above discussed, and relying on assignments based on the assumption that the court must find a delivery of the machinery under the written order. Accordingly, this disposes of all assignments of error adversely to appellant. We consider the case covered in all particulars by the holding of this court in Colean Mfg. Co. v. Blanchett, as evidently did the learned trial judge who acted

as a member of this court by request in the decision of that case. It is likewise apparent that counsel for respondent framed the issues and tried this case to bring them under the case cited. We reaffirm the doctrine of that decision. Accordingly, the judgment of the trial court is affirmed, and judgment is ordered in accordance therewith.

MORGAN, Ch. J., not participating.