[No. 13159. Department .Two. — February 1, 1890.]

FRANCIS MORA, ROMAN CATHOLIC BISHOP OF MONTEREY, APPELLANT, *v.* CORNELIUS MURPHY, RESPONDENT.

TENANCY IN COMMON — SALE BY CO-TENANT — POWER OF ATTORNEY. — A power of attorney from one co-tenant to another to convey and sell, or to agree to convey and sell, his interest in the premises held in common, does not authorize the other co-tenant to contract for the boring of a well on the premises, and to pay for it in land; and if such co-tenant so contracts in his own name, the contract and a conveyance in pursuance thereof will bind only his interest in the land.

ID. — EJECTMENT — ESTOPPEL OF DONOR OF POWER — PARTITION — RIGHTS OF GRANTEE OF SPECIFIC TRACT. — In such case the co-tenant who gave the power of attorney is not estopped to claim his undivided interest in the land, in an action of ejectment against the grantee of a specific part of the land from the other tenant in common, by reason of his knowledge of the contract and conveyance, and of the improvements made by such grantee, and his failure to object thereto; nor by reason of an agreement of partition between the original tenants in common setting apart to the donor of the power .that part of the land which included the specific tract granted, the grantee being no party to such agreement; but such grantee has an equity which he may still enforce in an action of partition brought by himself as a tenant in common to have his interest set apart out of the share of his grantor.

RELIGIOUS CORPORATIONS — FILING OF COPY OF ARTICLES. — CONSTRUCTION OF CODE. — Section 299 of the Civil Code, requiring a certified copy of the copy of the articles of incorporation filed with the secretary of state to be filed in the county where the corporation owns land, applies only to corporations a copy of whose articles were required by statute to be filed with the secretary of state, and does not apply to a religious corporation established before the code, under a statute requiring only the filing of its articles with the county clerk.

APPEAL from a judgment of the Superior Court of Santa Barbara County.

The facts are stated in the opinion of the court.

*R. B. Canfield,* for Appellant.

*W. C. Stratton,* for Respondent.

THORNTON, J.—Ejectment. Judgment for defendant. Appeal by plaintiff from the judgment.

On the 8th of May, 1874, J. S. Alemany and Thaddus Amat, Roman Catholic bishop of Monterey, the latter a corporation sole, became tenants in common of the College rancho, in Santa Barbara County, the interest of Alemany being three fifths, and that of Amat two fifths, of the rancho.

On the 21st of March, 1887, Amat, as a corporation sole, appointed Alemany his attorney in fact, by a letter of attorney bearing date the day just above named. By this letter Amat authorized his constituent as his attorney, and for him, and in his name, to convey and sell his title to the land above mentioned, or to agree to convey and sell the same, giving and granting to his attorney full power in the premises, etc.

On the tenth day of June, 1879, Alemany executed a written agreement, whereby he agreed to convey to defendant 640 acres of the rancho above named, in consideration of defendant's boring an artesian well upon the rancho. Defendant complied with the conditions of the agreement on his part, and on the fourth day of November, 1879, Alemany conveyed to defendant a specific tract in the rancho, which is the parcel of land involved herein.

The letter of attorney was in force when the agreement and conveyance above mentioned were executed. Neither the agreement nor the conveyance was signed by Amat or the plaintiff, and Alemany did not sign the name of either Amat or plaintiff to the document aforementioned.

Prior to the making of the agreement with defendant, Amat died, and was succeeded by plaintiff as bishop of Monterey.

The above facts are found by the court below.

The agreement with defendant was made by Alemany alone, and did not bind Amat or the plaintiff. The same is true of the conveyance. Neither purports to be made on behalf of Amat or the plaintiff. So far as the find-

ings show, Alemany acted wholly for himself in executing the agreement, as well as the conveyance to plaintiff. He did not sign the name of either Amat or Mora to either paper, and it is too clear to admit of argument that he acted, not as attorney under the letter of attorney, but entirely on his own account. Alemany was competent to contract. He was the owner of an undivided three fifths of the rancho, and the ownership of this large interest was sufficient inducement to prompt him to act for his own interest, and to bind himself alone.

Further, the letter of attorney did not authorize Alemany to contract for the boring a well and pay for it in land. He was authorized to convey and sell, or to agree to convey and sell. A power to sell and convey is *prima facie* a power to sell for money, usually *for cash paid.* To give it any other meaning, there must appear to be some usage or custom in the country where the power is to be exercised modifying the *prima facie* significance of the power conferred. The same is true of a power to agree to convey and sell or sell and convey. We see no difference in the meaning to be attributed to the two forms of expression, whether it is convey and sell or sell and convey.

The defendant was not justified in attributing any other effect in law to the agreement and conveyance than that above stated. It was clear that he was dealing with Alemany alone, and that to Alemany alone could he look for his compensation.

The only parties to the contract in fact and in law were Alemany and defendant.

It is argued that an estoppel arose and bound plaintiff because the agreement was made for the benefit of the rancho; the plaintiff was present while the well was being bored, and knew that Alemany had agreed to convey the land to defendant in consideration of his boring it; that at the time a partition was made between plain-

tiff and Alemany, by which the specific tract conveyed to the defendant fell into the portion conveyed to plaintiff, plaintiff knew that this land had been conveyed by Alemany to defendant for boring the well; *and that it purported to convey the whole title to this tract;* and that plaintiff further knew that defendant was occupying this land, and had made valuable improvements on it, and made no objections to the agreement or the deed, or to the well, or the boring of it, and gave defendant no notice of any objection to the agreement or well or deed.

The above facts are found on which this contention as to the estoppel is based.   Before considering the effect of these facts as an estoppel, it is well to notice one matter injected into the findings as a fact, which is clearly matter of law.

It is stated in the finding, as is quoted above, that plaintiff knew that the deed of Alemany to defendant purported to convey the *whole title to the tract.*   This cannot be said from any fact appearing in the findings, unless it be held to be law that one tenant in common can, by conveying a specific tract, convey the title of his co-tenant.   The legal character of Alemany's deed to defendant has been considered above, and it is clear, both in reason and authority, that he conveyed no more than an undivided three fifths of the tract in suit, and intended to convey no more.

It follows from what has been above said that there can be no estoppel upon the facts found.

Granted that plaintiff knew of the agreement, the well-boring, and the deed, that he was further cognizant of the facts of occupation by defendant, and making improvements, without making any objection, where is the estoppel ?

Plaintiff knew that Alemany had a right to contract and pay for a well on his own land with his own land, and to make a deed of it.   He also knew that defendant had a right to the deed made by him, and to occupy and

improve the land. What right had plaintiff to make any objection to such acts of Alemany and defendant ? And of what avail would such objection have been ? The parties were only exercising each his own rights, which rights, so acted on and exercised, plaintiff also knew did not in the least affect or impair his rights.

The failure of plaintiff to object did not affect defendant's rights. Defendant was not deceived in any way. He was permitted to exercise his rights without molestation by plaintiff. How anything like estoppel can be predicated of plaintiff's conduct does not appear.

We think it clearly follows that the plaintiff and defendant became tenants in common of the land in suit (*Stark* v. *Barrett*, 15 Cal. 363), the plaintiff's interest being two fifths and the defendant's three fifths thereof; and that plaintiff is entitled to recover his property (*Carpentier* v. *Webster*, 27 Cal. 524), unless a further contention of defendant can be maintained. This contention we proceed to consider.

Bishop Amat became a corporation sole in 1870. He filed his articles of incorporation in the office of the county clerk of Monterey County, in the year just named, and filed a certified copy of those articles, so filed in Monterey County, in the office of the county clerk of the county of Santa Barbara, before this action was commenced. The original articles of incorporation were never filed in the county of Santa Barbara, nor has a copy of the copy of the articles of incorporation filed in the office of the secretary of state, certified by said secretary, ever been filed in the office of the county clerk of Santa Barbara County.

The contention of defendent is, that as a certified copy of the copy of the articles of incorporation filed in the office of the secretary of state has never been filed in the county clerk's office for Santa Barbara County, plaintiff cannot maintain this action.

As the legislation of this state stood in 1870, when the

corporation plaintiff was formed, the filing of the articles of incorporation was only required to be made with the county clerk of the county where the church or other religious society or association was situated. (See Stats. 1850, p. 374; Act of 1850, sec. 177; Stats. 1854, p. 53, sec. 2, amending sec. 184 of Act of 1850.)

In 1853 an act was passed providing for the formation of manufacturing, mining, and trading corporations, and by this act it was provided that the certificate of incorporation (articles of incorporation) should be filed in the office of the county clerk, etc., and a duplicate of the same filed in the office of the secretary of state. (Stats. 1853, p. 37, sec. 2.) Religious corporations were not referred to in this act, and it had no application to them. Such corporations were not affected by this act. The law as to them remained unchanged.

Has the law as to such corporations ever been changed? It is said that it has, by the provisions of the Civil Code, and we are referred to section 299 of that code.

It is clear on a perusal of the section referred to (Civ. Code, sec. 299) that it refers only to corporations whose articles had been required by the statute to be filed with the secretary of state. This is so evident from reading the section that it is needless to further elaborate the question.

The law at no time required such corporation as is involved in this case, formed previous to the code, to file its articles of incorporation, or a copy or duplicate thereof, in the secretary of state's office. As to such a corporation formed since the code went into effect, we say nothing.

We are fully convinced that the contention of defendant under discussion cannot be maintained, and that the court below erred in rendering judgment for defendant on its finding of facts.

We remark, further, in relation to the partition of the rancho by Amat and Alemany, that, conceding the de-

fendant had an equity to have the tract conveyed to him by Alemany set apart to him on a partition of the rancho, such equity may still exist and be enforced in an action for a partition. This equity, if it exists, entitles the defendant to have his interest set apart out of the share of Alemany. The partition made certainly does not affect defendant, as he was no party to it. As the facts appear in this case, defendant can have no right to have his interest taken from the share of Mora.

The judgment is reversed and cause remanded, with directions to the court below to enter judgment for plaintiff for his undivided two fifths interest in the tract in controversy.

So ordered.

SHARPSTEIN, J., and McFARLAND, J., concurred.

Hearing in Bank denied.