McGeehan, Appellant, vs. Gaar, Scott & Company, Respondent.

*September 6—October 18, 1904.*

(1) *Special verdict: Disregarding answer not called for.* (2–4) *Agency to sell machinery: Limits of territory: Right to commissions.*

1. A question in a special verdict was to be answered only in case the jury answered a previous question in the affirmative. They answered the previous question in the negative, but nevertheless proceeded to answer the later question. *Held*, that such answer to the later question should be disregarded.

2. A contract appointing an agent for the sale of agricultural machinery at D. gave him "the privilege of making sales in the vicinity of D. aforesaid." On it was printed the following indorsement: "The design of a vicinity contract is to pay an agent the stipulated commission on whatever machinery he may sell under the provisions of the contract, not in the territory of another agent who has the exclusive right to sell in a defined territory." Another agent, under a similar contract, was located at R. *Held*, that the contracts did not fix definite limits to the territory of the agents respectively, and that the agent at D. had the right to make sales in a locality for which D. was the market town although it was slightly nearer to R.

3. A contract appointing plaintiff as defendant's agent to sell its machines at a certain place did not require him to sell its machines exclusively. He had been, and at the time was, agent for other makers of similar machines. Defendant knew this fact, and the agency contract was made with reference to it. *Held*, that plaintiff did not forfeit his right under the contract to a commission on a sale of one of defendant's machines, by reason of the fact that he had attempted to sell to the customer a machine of another make.

4. A sale of defendant's machinery was made in plaintiff's territory, upon which, under the contract, he was entitled to a commission if the amount received by defendant on the sale exceeded the net price of the machinery. An action to recover such commission was tried on both sides upon the theory that defendant was chargeable with the market value in that county of old machinery taken in exchange for the new, and the jury found that such market value was a certain sum which, added to the cash received, made an amount greater than the net price. *Held*, that plaintiff was entitled to his commission accordingly.

McGeehan v. Gaar, Scott & Co. 122 Wis. 630.

APPEAL from a judgment of the circuit court for Brown county: S. D. HASTINGS, Circuit Judge. *Reversed.*

This is an action to recover agent's commissions upon the sale of a threshing outfit. The defendant manufactures threshing machinery at Richmond, Indiana, and the plaintiff resides at De Pere, Brown county, Wisconsin. On the 13th day of January, 1900, the plaintiff and defendant made an agency contract, whereby the defendant appointed the plaintiff its agent for the sale of its machinery at De Pere until November 1, 1900, with the privilege of making sales in the vicinity of De Pere, the plaintiff to receive as consideration for his services twenty per cent. on the list price of threshing machines and engines sold, ten per cent. on stackers, and twenty-five per cent. upon repairs; a cash discount of five per cent. being allowed also, which, in case the agent cashed all sales made in 1900, was to become ten per cent. Among other provisions the contract contained the following:

"If an Agent sells our machinery under list price, such reduction will be taken from his commission. If the Agent takes anything in trade, it is understood that he takes it on his own account, and the amount allowed for it comes out of his commission. If the amount allowed is more than his commission, he is to make up the deficiency."

"We reserve the right to sell to any parties in your territory who may come to the shop to buy, or send their orders direct to us or any of our General Agents. When, for any cause, you decline or delay closing a sale, we reserve the right to make same at our option, without commissions to you; but where such parties have been solicited, or their attention called to our Machines by one of our Agents, then such Agent may, on a satisfactory representation of his claims, have such commission as his agency in making the sale will entitle him to, above regular net price. We also reserve the right to make sales of machinery on exhibition at fairs, without allowance of any commission to any Agent. We also reserve the right of revoking this Agency at any time when you shall fail or neglect to properly discharge the duties thereof, or for other just cause. If we shall be satisfied that the territory allotted

to any Agent is not fully canvassed for the sale of our machines, we reserve the right to put a canvasser in his territory, and on sales made by such canvasser, employed by us, no commission will be allowed said Agent."

"The design of a Vicinity Contract is to pay an Agent the stipulated commission on whatever machinery he may sell under the provisions of the contract, not in the territory of another Agent who has the exclusive right to sell in a defined territory."

The complaint charges that in July, 1900, two persons, named John and George Duckett, residing a number of miles distant from De Pere, had their attention called to the defendant's threshing machinery, and were solicited to purchase a threshing outfit by the plaintiff, and that as a result of such solicitation they bought, July 28, 1900, from the defendant an engine, separator, and stacker, the list prices thereof amounting in all to $2,360, upon which sale the plaintiff was entitled to commissions amounting to $660.80 by virtue of his services in soliciting the said Ducketts to purchase such machinery.

The answer alleges that the Ducketts did not reside at De Pere, or in its vicinity, or within the plaintiff's territory, and denies that the plaintiff solicited their attention to the defendant's machinery, but alleges that if he solicited them to purchase any machinery it was the machinery of rival manufacturers; that the plaintiff did not fully canvass his territory for the sale of the defendant's machines, but canvassed the same for machinery of rival manufacturers, and that defendant was satisfied previous to July 28, 1900, of such failure to canvass; that one Frank Walsh, agent of defendant, learned through a source other than the plaintiff that the Ducketts might purchase a threshing outfit, and called upon them July 28, 1900, and took an order for certain threshing machinery, for which the Ducketts agreed to give their notes for $1,300, and also to give an old Rumley threshing outfit, worth not to

exceed $300 to $400, and that defendant accepted said offer and shipped the machinery, but that in order to complete the sale said Walsh was obliged to pay the freight upon the machinery, amounting to $66.83; that the list price of the machinery so sold amounted in all to $2,381, and the net cash price of said company for same was $1,831.06; that if plaintiff did solicit the Ducketts at all for such machinery he delayed closing such sale, expecting to sell an "Advance" outfit instead; and that he made no satisfactory representation to the defendant of his claim for a commission.

The action was tried before a jury, who returned the following special verdict:

"(1) What was the market value in July, 1900, in Brown county, of the old outfit taken in part payment by the defendant for the machinery sold by them to the Ducketts? *A.* $700.

(2) Did the plaintiff, *McGeehan,* procure the Ducketts as purchasers willing to buy the machinery from the defendant for $1,300 and the old outfit? *A.* Yes.

(3) Did the defendant's agent Walsh learn from *McGeehan* July 26, 1900, that the Ducketts were thinking of buying a new outfit, and promise to return to De Pere from Sturgeon Bay and go with *McGeehan* and try to make a sale to them? *A.* Yes.

(4) Did the Ducketts get Mr. Winkler to write to defendant to send an agent to see them? *A.* No.

(5) If your answer to the fourth question be 'Yes,' then answer this: Did the defendant, acting on notice secured from Winkler, send Walsh and close the trade through him, without any notice from or knowledge derived through *McGeehan* that the Ducketts wanted to buy an outfit? *A.* Yes.

(6) Did *Mr. McGeehan* inform the Ducketts that he was agent for sale of *Gaar, Scott & Co.* machines, and refer them to Winkler to see one, and did that fact induce them to examine the machine and conclude to buy one if they could agree upon terms? *A.* Yes.

(7) Did the Ducketts suppose that Mr. Walsh represented *McGeehan* when they closed the trade? *A.* Yes.

(8) If your answer to the seventh question should be 'Yes,'

then answer this: Would the Ducketts have closed the trade with Walsh had they known that he did not represent Mc-Geehan?   A. Yes.

(9) Was McGeehan, up to July 27, 1900, endeavoring to sell a Rumley outfit?   A. Yes."

The plaintiff moved to set aside the affirmative answers to questions 5, 8, and 9, and substitute negative answers in each case therefor; and for judgment upon the verdict when so amended.   The court set aside the answer to the fifth question, and entered judgment upon the verdict for the defendant, and the plaintiff appeals from that judgment.

For the appellant there was a brief by *Wigman, Martin & Martin,* and oral argument by *P. H. Martin.*

*Sol. P. Huntington,* for the respondent.

WINSLOW, J.   There was considerable discussion, upon the argument, as to the effect of the fifth question and answer contained in the special verdict and its evident inconsistency with the answer to the third question of the verdict.   To our minds the question is not important.   The fifth question was only submitted to the jury in a certain contingency, i. e., if they had already answered the fourth question, and answered it in the affirmative.   Inasmuch as it appears that they answered the fourth question in the negative, it is evident that the fifth question was never submitted to them by the court, and the question and answer drop entirely from the case and may be disregarded.

Upon the plaintiff's motion for judgment on the verdict the circuit judge wrote a comprehensive and able opinion, which is returned with the record, which has been of much assistance to us, and with most of which we fully agree.   As to the claims made by defendant that the sale to the Ducketts was not made within the plaintiff's territory, that the plaintiff had forfeited his right to a commission by endeavoring to sell the Ducketts a Rumley outfit, and that the defendant had a

right to make the sale without liability for commissions be-
cause plaintiff had not thoroughly canvassed his territory,
the circuit judge makes the following very pertinent remarks,
which we adopt as our views on those points:

"Was the sale within the plaintiff's territory? By the terms
of the contract the plaintiff is appointed by the defendant
'their agent for the sale of the machinery at De Pere afore-
said; said agent to have the privilege of making sales in the
vicinity of De Pere aforesaid.' On the back of the printed
form of contract used in this case is printed the following
indorsement: 'The design of a vicinity contract is to pay an
agent the stipulated commission on whatever machinery he
may sell under the provisions of the contract, not in the terri-
tory of another agent who had the exclusive right to sell in a
defined territory.'

"The Ducketts, to whom the machinery was sold, lived in
Brown county, thirteen miles from De Pere. De Pere was
the market town for those living in their vicinity. Other De
Pere agents, and the plaintiff as agent for other companies,
had worked that territory as within the De Pere agency. The
defendant had another agent at Reedsville, Manitowoc county.
The agent's contract contained the same provision. The
Ducketts lived about thirteen miles or little less from Reeds-
ville, a little nearer Reedsville than De Pere. The agent at
Reedsville had nothing to do with the sale in question, and
did not claim that it was made in his territory or that he was
entitled to any commission on account of it.

"Counsel for defendant contends that the limits of the
respective agencies must be at a point equidistant from De
Pere and Reedsville. But I agree with the plaintiff's counsel
that these contracts are not to be construed as fixing definite
limits to the agent's territory. The agent's territory is not
'defined territory,' within the meaning of the indorsement on
the contract. The business of these agencies is not to sit still
at some place and sell machinery to those who come to the
agent and want to buy it, but to canvass or work their terri-
tory; and these 'vicinity contracts' are made rather than those
with a definite territory on purpose to meet cases of this kind
where a locality may be more closely connected in business
way with any one city or village than another nearer by, and

to avoid conflict between different agents over border territory; the intent being to give both agents a right to make sales in such localities, and the territory to be considered as belonging to whoever makes the sale. The contract provides that in disputed cases the agent who delivers and settles for the machine shall have the commission. As between plaintiff and defendant, the sale in question was within plaintiff's territory.

"Does the fact found by the ninth answer in the special verdict show that the plaintiff had forfeited his right to commission on this sale, and that defendant had a right without incurring any liability to him? Had the plaintiff's contract with defendant required him to sell their machines exclusively, it might have had that effect. But the plaintiff had been in the business of selling such machinery for upwards of twenty years. He did not represent any one company exclusively, but was agent for several. At the time he contracted with defendant he had similar contracts with two other companies, who made and sold similar machines. The defendant knew that fact. The contract was made in reference to it. All that the plaintiff was obliged to do was to treat fairly the defendant, and offer their goods as freely as others. The mere fact that he was trying to make a trade for the Rumley Company with one of his customers who had a Rumley outfit, at the same time he was calling their attention to defendant's machines as one they might like better, was not a violation of his contract or of his duty to defendant.

"The contract reserved to defendant the right to put a canvasser in plaintiff's territory, and make sales without being responsible to the plaintiff for commissions, if satisfied that the territory was not fully canvassed. There is no pretense that they were so dissatisfied, or that they made this sale through such canvasser."

Having thus disposed of these questions, the circuit judge proceeds to consider whether, upon the facts as disclosed by the evidence and found by the jury, the plaintiff is entitled to recover anything. It is unnecessary to recite the facts at length. So far as essential to the discussion, they are brief. *McGeehan* had tried to sell the Ducketts a new Rumley outfit, but the negotiations failed. Afterwards the Ducketts saw a *Gaar-Scott* machine at the house of Winkler, a neighbor,

and on July 27th one of the Ducketts went to De Pere, and saw *McGeehan* and offered him $1,300 and their old Rumley outfit for a *Gaar-Scott* outfit, and *McGeehan* promised to come out with one of the defendant's men and see the old Rumley outfit. On the previous day—July 26th—*McGeehan* had seen Walsh (one of the defendant's traveling agents) at De Pere, and told him that the Ducketts were thinking of buying a new outfit, and Walsh promised to return to De Pere Saturday, and go with *McGeehan* to see the Ducketts. It seems that Winkler had before this, of his own motion, written to defendant's agent at Fond du Lac about the Ducketts, and the Fond du Lac agent, on the 28th of July, without knowing of *McGeehan's* connection with the affair, directed Walsh to go to Ducketts, and Walsh on that day went there without *McGeehan's* knowledge, and sold the machine for $1,300 in notes (which have been paid) and the old Rumley outfit, the market value of which in Brown county was $700. The Rumley outfit was at once taken to Fond du Lac, and some repairs made upon it, and most of it has been disposed of.

Do these facts entitle the plaintiff to recover commissions? Upon this question the circuit judge says:

"The plaintiff might possibly have sued for damages for breach of contract by defendant in coming into his territory and depriving him of a sale that he could have made and the profits derived from it; but that is not this action. Whether such an action could have been maintained it is not necessary to decide. I do not think it could, on the facts proven. Certain instructions printed on the back of the contract are referred to and made a part of it. The following is one of them: 'When for any cause you decline or delay closing a sale we reserve the right to make the same at our option, without commissions to you, but where such parties have been solicited or their attention called to our machines by one of our agents, then such agent may on a satisfactory representation of his claim, have such commission as his agency in making the sale will entitle him to, above regular

net prices.' This provision is pleaded by the plaintiff, and his right to commission based upon it. He made no objection to the sale being closed as it was, says that he regarded and treated it as one made through his agency, and about September 1, 1900, he claimed from the defendant his commissions on the sale.

"I think that the facts bring the case within the provision, and that the plaintiff is entitled to such commissions as the contract contemplated. The defendant had no right to make the sale, take old machinery in part pay, and require the plaintiff to take it and pay them their net price in cash. By the trade with Ducketts the old outfit became the *defendant's* property and not the plaintiff's. They sold and delivered the new outfit for the old outfit and Ducketts' notes for $1,300, due September 15, 1900. The plaintiff learned two days later that the sale had been made, and a week or ten days later how it had been closed. He made no objection to it. Conceding that he might have tendered defendant their net price for the machine and made the old outfit and notes his, he did not do so. He has treated the sale as one made by defendant, and on which he is entitled by the contract to commission. By this action he has selected his remedy—to sue for commissions due him. I think the case stands as it would have stood had the plaintiff been with Walsh and consented to his making just the trade he did for the Rumley outfit, or had he said, 'Go on and make a sale or trade without regard to me,' or 'I have a purchaser who will pay $1,300 and you take his old machine for the balance. If you will take the old machinery for the balance close the trade.'"

So far we agree fully with the reasoning of the circuit judge. At this point, however, he says that on such a sale the plaintiff is entitled to receive as his commission all that the defendant, in the exercise of due care and diligence, *realized* over and above its net price and nothing more. It received $1,300 in cash, and, after making certain repairs, realized a total net cash of $568.50 and a secondhand engine (value not shown) for the Rumley outfit, making a total of $1,868.50 shown to have been *realized* by the company. The net price of the outfit sold which the defendant

was entitled to receive before any agent's commissions were paid was $1,921. The Ducketts were to pay freight, but declined to do so, and the agent, to settle the dispute, paid $48 freight, making $1,969 which should be paid to defendant before any commission is due. On this basis the defendant is short about $100 of its net price, with the old engine on hand, whose value does not appear; and the plaintiff has not proven himself entitled to any commission because he has not shown that the defendant has received its net price. The judge then goes on to say that if it (the Rumley outfit) "was a salable article having a fixed market value which could be obtained for it by simply offering it for sale in open market, and defendant should have known that fact, it was clearly their duty to have offered it for sale in such market, unless they had good reason to believe that more could be got for it, and they would be chargeable elsewhere with what it would have brought in such market. There are many things which have no fixed market value or ready sale in open market. This is eminently true of old machinery, such as that in question." Here is the difficulty with the circuit judge's argument. He says, as matter of law, that secondhand threshing machinery has no market value. We think we should find it very difficult to agree with this proposition in any case, but in the situation of the present case it seems to us utterly impossible. The case was tried to a finish on both sides upon the theory that the defendant was chargeable with the market value, in Brown county, of the Rumley outfit, and that the question of the amount of such value was for the jury. We are unable to perceive now any reason to doubt the correctness of the proposition, but, whether correct or not, both sides adopted it on the trial of the case. In addition to this, by the first question and answer of the verdict it is established as a fact in the case that the old outfit *had* a market value in Brown county at the time of the sale, and that such market value was $700. We see no escape from the conclusion that

the fact that it had a market value is absolutely established in this case, and is not open to question by the trial court or by this court. It is, therefore, settled that the defendant received money and property amounting to $2,000 for the threshing outfit sold to the Ducketts. There is some discrepancy between the parties as to the amount which the defendant is entitled to receive net before any agent's commissions arise, and the question is not settled by the verdict. Mr. Fischer, the defendant's general agent at Fond du Lac, who sent Mr. Walsh to the Ducketts, testified that the net price to the company of the outfit sold to the Ducketts should be $1,969. The circuit judge seems to have accepted these figures as the correct figures on the plaintiff's motion for judgment, and we are inclined to do likewise. On this basis the plaintiff was entitled, under his agency contract, to judgment for $31 commission, and judgment should have been awarded him on the verdict for this sum, with interest. We do not see how, under the provisions of the contract, he is entitled to any larger sum.

*By the Court.*—Judgment reversed, and action remanded with directions to enter judgment on the verdict for the plaintiff in accordance with this opinion.